## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TED CRUZ FOR SENATE,<br>815 A Brazos, PMB 550<br>Austin, TX 78701, *and*<br><br>RAFAEL EDWARD ("TED") CRUZ<br>815 A Brazos, PMB 550<br>Austin, TX 78701,<br><br>*Plaintiffs,*<br><br>v.<br><br>FEDERAL ELECTION COMMISSION,<br>and ELLEN L. WEINTRAUB, MATTHEW<br>S. PETERSEN, CAROLINE C. HUNTER,<br>and STEVEN T. WALTHER, in their<br>official capacities as Commissioners of the<br>Federal Election Commission<br>1050 First Street, N.E.<br>Washington, D.C. 20002,<br><br>*Defendants.* | ))))))))))))))))))))))) | Civil Action No. 19-908 |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### PRELIMINARY STATEMENT

1.     The First Amendment commands that "Congress shall make no law . . . abridging the freedom of speech."  This bedrock liberty was designed to ensure the full and free political debate that is the hallmark of our democratic form of government.  At its core, it protects the rights of citizens to engage in political speech.  Since the founding of the republic, much of that speech has originated with candidates for public office in the context of elections.

2.     Section 304 of the Bipartisan Campaign Reform Act ("BCRA"), which amended

the Federal Election Campaign Act of 1971 (as amended, "FECA"), abridges political speech at

the very core of the First Amendment's guarantee.  Specifically, Section 304 of BCRA provides

that if a candidate "incurs personal loans . . . in connection with the candidate's campaign for

election," his or her authorized campaign committee "shall not repay (directly or indirectly), to

the extent such loans exceed $250,000, such loans from any contributions made to such

candidate or any authorized committee of such candidate after the date of such election." 52

U.S.C. § 30116(j).  The FEC has interpreted this statute to restrict repayment not only of loans

secured or guaranteed by the candidate for his or her campaign, but also of loans made to the

campaign from the candidate's personal funds. *See* 11 C.F.R. § 116.11. BCRA and its

implementing regulation thus effectively restrict a candidate's ability personally to fund his or

her own campaign for federal office by capping at $250,000 the amount of money raised after an

election that an authorized campaign committee may use to discharge a pre-election debt owed to

the candidate.  Sanctions for violating Section 304 include substantial civil fines and, for a

knowing and willful violation, criminal penalties of up to five years in prison.

3.     The $250,000 post-election loan-repayment limitation violates the fundamental

First Amendment rights of candidates, their authorized campaign committees, and their donors.

It restricts the political speech of candidates and their campaign committees by limiting the time

period in which the candidate may raise money to communicate his or her political message and

by effectively limiting the candidate's ability to lend the campaign necessary funds.

Criminalizing this basic means of financing political communication infringes a candidate's

"fundamental . . . right to spend personal funds for campaign speech."  *Davis v. FEC*, 554 U.S.

724, 738 (2008).  In addition, the post-election repayment limitation restricts the speech of those

potential donors who would otherwise support a candidate financially by contributing after an election to fund pre-election political speech.

4.     In short, Section 304 of BCRA and its implementing regulation are precisely the sort of laws that the First Amendment was designed to prevent and that the Supreme Court has consistently held unconstitutional.   These arbitrary restrictions on core political speech by candidates, their campaign committees, and their supporters are invalid and must be struck down.

## NATURE OF THIS ACTION

5.     This is an action for declaratory relief invalidating Section 304 of BCRA, 52 U.S.C. § 30116(j), and its implementing regulation, 11 C.F.R. § 116.11, and for injunctive relief against enforcement of those provisions by the Defendants, on the grounds that: (1) Section 304 and its implementing regulation infringe Plaintiffs' freedom of speech in violation of the First Amendment to the Constitution of the United States; (2) those provisions infringe the First Amendment rights of potential post-election donors to Plaintiffs' federal election campaign; and (3) the implementing regulation, Section 116.11, is not in accordance with BCRA itself.

6.     On March 27, 2002, President George W. Bush signed BCRA into law, thereby enacting a comprehensive revision and enlargement of the Nation's campaign finance regulatory regime.   This revision and enlargement sought to implement sweeping new restrictions on the rights of corporations, individuals, and other entities to participate in the political process and to exercise their constitutional right to express their political views.

7.     The Supreme Court has repeatedly invalidated provisions of BCRA that restricted core political speech.   *See, e.g.*, *McCutcheon v. FEC*, 134 S. Ct. 1434 (2014); *Citizens United v. FEC*, 558 U.S. 310 (2010); *FEC v. Wisc. Right to Life, Inc.*, 551 U.S. 449 (2007); *McConnell v. FEC*, 540 U.S. 93 (2003).   Most pertinently, in *Davis v. FEC*, 554 U.S. 724 (2008), the Court

struck down the so-called "Millionaires' Amendment," which effectively penalized a self-financing candidate by raising contribution limits for his opponent when the self-financing candidate's campaign expenditures exceeded a certain amount.  And in *Arizona Free Enterprise Club's Freedom Club PAC v. Bennett*, the Court reaffirmed *Davis* and applied its reasoning to invalidate a state public-financing scheme that similarly "force[d] [a] privately financed candidate to 'shoulder a special and potentially significant burden' when choosing to exercise his First Amendment right to spend funds on behalf of his candidacy." 564 U.S. 721, 737 (2011) (quoting *Davis*, 554 U.S. at 739).

8.      Although the statutory loan repayment limitation "is in the same statutory subsection of BCRA (section 304(a)) as other provisions that the Supreme Court in *Davis* held to be unconstitutional," Defendant FEDERAL ELECTION COMMISSION ("FEC") has concluded that "the *Davis* decision did not invalidate the personal loan provision in BCRA."  Notice 2008-14, 73 Fed. Reg. 79597-01, 79600. (Dec. 30, 2008).

9.      The FEC has also concluded that the loan repayment restriction challenged here is severable from the provision of Section 304 struck down in *Davis* and that it therefore is valid and enforceable notwithstanding the *Davis* decision.  *Id.*

10.     Like the other provisions of BCRA that the Supreme Court has invalidated, the loan repayment limitation of Section 304 and its implementing regulation infringe the fundamental First Amendment rights of candidates, their authorized campaign committees, and their supporters to engage in political speech.

11.     For this reason, and for the reasons set forth in the allegations below, Plaintiffs seek a declaration that the loan repayment restrictions of Section 304, 52 U.S.C. § 30116(j), and

its implementing regulation, 11 C.F.R. § 116.11, are unconstitutional, and an order enjoining Defendants from enforcing them.

## PARTIES TO THIS ACTION

12.    Plaintiff RAFAEL EDWARD "TED" CRUZ ("CRUZ") was first elected United States Senator from the State of Texas in 2012, and he was re-elected to that same position in the 2018 general election. During the 2018 election cycle, CRUZ'S campaign was funded in large part by contributions from individual supporters. Prior to the 2018 general election, CRUZ's authorized campaign committee also received loans originating from CRUZ's personal bank account funds and CRUZ's margin-approved brokerage account that is secured with CRUZ's personal assets.

13.    Plaintiff TED CRUZ FOR SENATE ("CRUZ COMMITTEE") is the official authorized campaign committee for the 2018 primary and general election campaigns of CRUZ.

14.    Defendant FEDERAL ELECTION COMMISSION was established by 52 U.S.C. § 30106 and is an independent agency with regulatory authority over federal elections and campaigns of candidates for federal office.  The duties of the FEC include the collection, review, and audit of campaign finance disclosures by regulated entities, the enforcement of the provisions of FECA, including as amended by BCRA, and oversight of the public funding of Presidential elections.  The FEC has exclusive jurisdiction with respect to the civil enforcement of FECA.

15.    Defendant ELLEN L. WEINTRAUB is a Commissioner and the Chair of the FEC.  As a Commissioner, she is responsible for administering and enforcing FECA, as amended by BCRA.  She is sued in her official capacity.

16.     Defendant MATTHEW S. PETERSEN is a Commissioner and the Vice Chair of the FEC.  As a Commissioner, he is responsible for administering and enforcing FECA, as amended by BCRA.  He is sued in his official capacity.

17.     Defendant CAROLINE C. HUNTER is a Commissioner of the FEC.  As a Commissioner, she is responsible for administering and enforcing FECA, as amended by BCRA. She is sued in her official capacity.

18.     Defendant STEVEN T. WALTHER is a Commissioner of the FEC.  As a Commissioner, he is responsible for administering and enforcing FECA, as amended by BCRA. He is sued in his official capacity.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 2201, and 2202, and § 403 of BCRA.

20.     Plaintiffs request that a three-judge court be convened pursuant to 28 U.S.C. § 2284, and section 403(a)(1) of BCRA, 52 U.S.C. § 30110 note.

21.     Venue in this Court is proper pursuant to section 403 of BCRA, 52 U.S.C. § 30110 note.

## FACTUAL BASIS FOR CLAIMS

22.     Section 304 of BCRA imposes a $250,000 limit on an authorized campaign committee's use of post-election campaign contributions to repay a candidate's personal campaign loans:

> Any candidate who incurs personal loans made after the effective date of the Bipartisan Campaign Reform Act of 2002 in connection with the candidate's campaign for election shall not repay (directly or indirectly), to the extent such loans exceed $250,000, such loans from any contributions made to such candidate or any authorized committee of such candidate after the date of such election.

52 U.S.C. § 30116(j).

6

23.     While the text of Section 304 reaches only personal loans that a candidate "*incurs*" in connection with his campaign, *id.* (emphasis added), the FEC's implementing regulation applies not only to loans incurred by the candidate for the benefit of his campaign, but also to loans that a candidate *makes* directly to the campaign from his personal funds.  11 C.F.R. § 116.11(a).

24.     When it promulgated 11 C.F.R. Section 116.11, the FEC acknowledged that this interpretation is difficult to square with the ordinary meaning of the term "incur," and that by its text Section 304 "arguably" applies only to "loans that are made to candidates rather than loans made by candidates." Increased Contribution and Coordinated Party Expenditure Limits for Candidates Opposing Self-Financed Candidates, 68 Fed. Reg. 3970, 3974 (Jan. 27, 2003). But the FEC nonetheless interpreted Section 304 as reaching loans made by candidates to their committees because it thought that interpretation justified by BCRA's "legislative history" and the "practical consequences" of adopting the narrow interpretation. *Id.*

25.     When "the aggregate outstanding balance of the personal loans exceeds $250,000 after the election," the FEC's regulations establish a post-election time limit on a campaign committee's ability to use cash on hand as of the date of the election to repay pre-election debts owed to the candidate. 11 C.F.R. § 116.11(c) "If [a candidate's] authorized committee uses the amount of cash on hand as of the day after the election to repay all or part of [the candidate's] personal loans, it must do so within 20 days of the election." *Id.* § 116.11(c)(1).  Any outstanding loan balance in excess of the $250,000 cap must be treated "as a contribution by the candidate." *Id.* § 116.11(c)(2).

26.     The FEC may seek civil penalties, including the greater of $5,000 or the amount of the contributions or expenditures at issue, for any violation of FECA.   52 U.S.C.

§ 30109(a)(5)(A). If a violation is knowing or willful, the FEC may seek civil penalties of up to $10,000 or double the amount of the contributions or expenditures at issue. *Id.* § 30109(a)(5)(B).

27.    Criminal penalties attach to any knowing and willful violation of FECA that involves the making, receiving, or reporting of any contributions, donations, or expenditures totaling $2,000 or more during a calendar year. *Id.* § 30109(d)(1)(A). An individual or corporation that knowingly commits such a violation is subject to fines under Title 18 of the United States Code, and imprisonment for up to five years, depending on the amount of the repayment. *Id.* § 30109(d)(1)(A)(ii).

28.    Prior to the November 6, 2018 general election, two loans totaling $260,000 were made to CRUZ's authorized campaign committee to help finance his campaign for the United States Senate. Of the $260,000 lent to CRUZ COMMITTEE, $5,000 originated from CRUZ's personal bank accounts and $255,000 originated from a margin loan that is secured with CRUZ's personal assets.

29.    CRUZ COMMITTEE had approximately $2.2 million on hand as of 11:59 p.m. on November 6, 2018; however, CRUZ COMMITTEE also incurred nearly $2.5 million in debts in connection with the 2018 general election, leaving it with approximately $406,194 in "net debts outstanding," as that term is defined and calculated pursuant to 11 C.F.R. § 110.1(b)(3). CRUZ COMMITTEE accordingly used the funds it had on hand to pay vendors and meet other obligations instead of repaying CRUZ's loans.

30.    As of November 27, 2018, the day following the 20-day deadline for repaying any personal loans in excess of the $250,000 limit under Section 116.11(c)(1), CRUZ COMMITTEE owed CRUZ $260,000 on the general election loans. CRUZ COMMITTEE subsequently made four repayments on the margin loan secured by CRUZ's assets totaling $250,000: (i) $25,000 on

December 4, 2018; (ii) $100,000 on December 11, 2018; (iii) $75,000 on December 18, 2018; and (iv) $50,000 on December 24, 2018. CRUZ COMMITTEE has not repaid any portion of CRUZ's $5,000 personal loan.

31.     Since CRUZ COMMITTEE has repaid the statutory maximum of $250,000 from money raised after the election toward the various loans originating from CRUZ's personal bank accounts and CRUZ's margin-approved brokerage account, CRUZ COMMITTEE continues to owe CRUZ $10,000 on the general election loans: the remaining $5,000 balance of the margin loan secured by CRUZ's assets and CRUZ's $5,000 personal loan.

32.     Because more than 20 days have now passed since the general election, the challenged statute and its implementing regulation prevent CRUZ COMMITTEE from making any additional payments toward the remaining balance due on the debts originating from CRUZ's personal bank accounts or the margin loan secured with CRUZ's personal assets, even if such payments are from contributions specifically raised, received, and designated for the retirement of debts in accordance with FEC regulations.

33.     Absent the restrictions of Section 304 and the Commission's corresponding regulation, Plaintiffs would solicit debt-retirement funds from potential donors and would use post-election contributions to defray the remaining $10,000 loan balance.

## CLAIMS FOR RELIEF

### COUNT I

34.     Plaintiffs hereby reallege and incorporate each of the foregoing allegations as if set forth herein.

35. By its terms, Section 304 of BCRA restricts the use of post-election contributions to repay loans incurred by a candidate for his or her campaign in order to disseminate the candidate's political message.

36. In addition, the FEC has interpreted this statute to restrict the repayment of loans made by a candidate from personal funds to his or her campaign for this purpose.

37. A candidate's political message is core political speech.

38. Regardless of whether Section 304 applies only to loans incurred by a candidate or also extends to loans made by a candidate from personal funds, the Government has no interest that can justify the challenged loan repayment restriction's infringement of Plaintiffs' First Amendment right to freedom of speech.

39. Because the Government has no interest that can justify the challenged statute's infringement of Plaintiffs' First Amendment rights to freedom of speech, the statute is unconstitutional on its face and as applied to Plaintiffs.

40. Even if Section 304's loan repayment restriction could be justified as applied to Plaintiffs and other winning candidates, the statute would have no justifiable application to losing candidates. Therefore, the loan repayment restriction is in any event unconstitutionally overbroad and is thus invalid in its entirety.

41. Accordingly, BCRA's loan repayment restriction is an unconstitutional abridgement of Plaintiffs' First Amendment right of free speech.

## COUNT II

42. Plaintiffs hereby reallege and incorporate each of the foregoing allegations as if set forth herein.

43.     Contributions to political campaigns are protected speech, whether made before or after an election.

44.     Regardless of whether Section 304 applies only to loans incurred by a candidate or also extends to loans made by a candidate from personal funds, BCRA's loan repayment restriction is an unconstitutional infringement on the First Amendment rights of potential post-election donors to Plaintiffs and to the campaigns of all candidates for federal office.

## COUNT III

45.     Plaintiffs hereby reallege and incorporate each of the foregoing allegations as if set forth herein.

46.     Because the challenged statute is unconstitutional, the FEC's regulation implementing that statute, 11 C.F.R. § 116.11, is likewise unconstitutional and is, therefore, "not in accordance with law." 5 U.S.C. § 706(2)(a).

## COUNT IV

47.     Plaintiffs hereby reallege and incorporate each of the foregoing allegations as if set forth herein.

48.     The FEC's 20-day regulatory limit on using cash on hand as of the date of the election to repay the candidate's personal campaign loans after an election violates the First Amendment, is not in accordance with law, and is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(c)(1).

## COUNT V

49.     Plaintiffs hereby reallege and incorporate each of the foregoing allegations as if set forth herein.

50.     Section 304 encompasses only personal loans that a candidate "*incurs . . . in connection with the candidate's campaign.*" 53 U.S.C. § 30116(j) (emphasis added).

51.     The FEC's regulatory inclusion of loans not only "incurred" by a candidate in connection with his campaign but also loans the candidate directly *makes* to his campaign from his personal funds is contrary to the plain text of Section 304, and it is thus not in accordance with law and is arbitrary and capricious in violation of 5 U.S.C. § 706(2)(c)(1).

## RELIEF REQUESTED

52.     Wherefore, Plaintiffs respectfully pray that a three-judge district court be convened and that said three-judge court hear this action, and upon such hearing:

a.   Declare that Section 304's loan repayment restriction, 52 U.S.C. § 30116(j), violates Plaintiffs' rights under the Constitution of the United States;

b.   Declare that 11 C.F.R. § 116.11 violates Plaintiffs' rights under the Constitution of the United States or is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

c.   Permanently enjoin and restrain Defendants, their agents, and assistants from enforcing, executing, and otherwise applying the challenged provisions; and

d.   Grant and order such further relief as the Court may deem just and proper, together with the costs and expenses, including attorney's fees, of this action.

Dated: April 1, 2019                                        Respectfully submitted,


                                                           s/ Charles J. Cooper
                                                           Charles J. Cooper
                                                             (D.C. Bar No. 248070)
                                                           John D. Ohlendorf
                                                             (D.C. Bar No. 1024544)
                                                           COOPER & KIRK, PLLC
                                                           1523 New Hampshire Avenue, N.W.
                                                           Washington, D.C. 20036
                                                           (202) 220-9600
                                                           (202) 220-9601 (facsimile)
                                                           ccooper@cooperkirk.com

                                                           Chris Gober
                                                             (D.C. Bar No. 975981)
                                                           The Gober Group PLLC
                                                           3595 RR 620 S., Suite 200
                                                           Austin, TX 78738
                                                           (512) 354-1787