# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TED CRUZ FOR SENATE, et al.,** | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 19-cv-908 (NJR, APM, TJK) |
| **FEDERAL ELECTION COMMISSION, et al.,** | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' Consolidated Motion for Partial Remand and to Compel Discovery Responses. *See* ECF No. 42 (hereinafter Defs.' Mot.). In their Motion for Partial Remand, Defendants ask the three-judge court to decline to exercise supplemental jurisdiction over Plaintiffs' challenge to the Federal Election Commission's regulations and to remand those claims for consideration by a single judge. Defendants' Motion to Compel concerns documents and information responsive to certain requests for production and interrogatories, which Plaintiffs have withheld on relevance grounds and pursuant to a First Amendment privilege.

Having considered the parties' briefs and accompanying exhibits, and for the reasons set forth below, the court concludes first that Plaintiffs' challenges to the FEC's implementing regulations are within the scope of the three-judge court's discretionary supplemental jurisdiction, and that interests of efficiency militate against remanding these regulatory claims for consideration by a single judge. The court further concludes that the disputed discovery requests seek information that is relevant to Defendants' merits-based defenses. At the same time, because Plaintiffs assert that certain documents and information responsive to the disputed discovery requests are shielded by a First Amendment privilege, in camera review of any documents arguably

subject to that First Amendment privilege is necessary before such documents may be produced to Defendants.

Accordingly, the court denies the Motion for Partial Remand and grants in part the Motion to Compel, subject to in camera review of any responsive documents as to which Plaintiffs assert a claim of First Amendment privilege.

I. Background

The court assumes familiarity with Judge Mehta's December 24, 2019, Memorandum Opinion and Order, which details the factual background of this case. Mem. Op. & Order, ECF No. 34 (Dec. 24, 2019). Briefly, Plaintiffs, Senator Rafael Edward Cruz ("Senator Cruz") and Ted Cruz for Senate ("Cruz Committee" or "Committee"), seek declaratory and injunctive relief invalidating and enjoining the enforcement of Section 304 of the Bipartisan Campaign Reform Act ("BCRA") and its implementing regulations, which place a $250,000 limit on the amount of post-election contributions that may be used to pay back a candidate's pre-election loans. *See* 52 U.S.C. § 30116(j); 11 C.F.R. § 116.11. Plaintiffs raise facial and as-applied constitutional challenges to both the statute and the regulations, alleging that the loan repayment limit contained therein infringes the First Amendment rights of Plaintiffs, other candidates, and potential post-election donors. In the alternative, Plaintiffs challenge the Commission's implementing regulations as arbitrary, capricious, and contrary to law.

At issue in this case are two campaign finance loans totaling $260,000 made by Senator Cruz to the Cruz Committee on the day before Election Day 2018. *See* Compl., ECF No. 1 (hereinafter Compl.), ¶ 28. Of the $260,000 lent to the Committee, $5,000 originated from Senator Cruz's personal bank accounts and $255,000 from a margin loan secured with Senator Cruz's personal assets. *See id.* Following election day, the Cruz Committee "used the funds it had on hand

2

to pay vendors and meet other obligations instead of repaying [Senator Cruz's] loans." *Id.* ¶ 29. The Committee did not use any of the funds it had on hand to pay off Senator Cruz's loans during the 20-day period within which Section 304's implementing regulations allow a candidate to pay back loans using pre-election contributions. *See* 11 C.F.R. § 116.11(c)(1). This meant that after that period elapsed, the balance of those loans that exceeded BCRA's $250,000 statutory cap on post-election contributions—$10,000—converted into a campaign contribution. *See id.* ¶¶ 30–31; 11 C.F.R. § 116.11(c)(2).

Following the 20-day repayment period, the Cruz Committee repaid Senator Cruz the $250,000 statutory maximum using post-election contributions, but BCRA foreclosed it from paying back the $10,000 balance. Compl. ¶¶ 31–32. Plaintiffs allege that, "[a]bsent the restrictions of [BCRA] and the Commission's corresponding regulation[s]," they "would solicit debt-retirement funds from potential donors and would use post-election contributions to defray the remaining $10,000 loan balance." *Id.* ¶ 33.

In December 2019, Judge Mehta granted Plaintiffs' Application for a Three-Judge Court, and, in the same order, denied Defendants' Motion to Dismiss for Lack of Subject-Matter Jurisdiction. *See* Mem. Op. & Order, ECF No. 34. Defendants now move the three-judge court to remand Plaintiffs' challenges to the implementing regulations to a single judge, and to order Plaintiffs to respond to certain discovery requests to which Plaintiffs have objected on relevance and First Amendment privilege grounds.

II. Motion for Partial Remand

In their Motion for Partial Remand, Defendants urge the three-judge court to decline to exercise supplemental jurisdiction over Plaintiffs' challenges to the regulations implementing Section 304 of BCRA, and instead remand those claims to a single district judge. Defendants raised a similar argument in their Motion to Dismiss for Lack of Subject-Matter Jurisdiction, which Judge

3

Mehta rejected. In his Memorandum Opinion and Order, Judge Mehta held that three-judge courts convened under BCRA have authority to exercise supplemental jurisdiction over ancillary claims "[i]f appropriate," but determined that the question of whether to do so here was "better left for the three-judge panel to resolve in the discretionary exercise of its supplemental jurisdiction." Mem. Op. & Order, ECF No. 34, at 17, 21. We resolve that question now and conclude that supplemental jurisdiction over Plaintiffs' regulatory claims is appropriate in this case.

At the outset, we must address whether this panel has authority to exercise supplemental jurisdiction over Plaintiffs' regulatory claims, which are ancillary to the constitutional claim under BCRA that provides the basis for the three-judge court's jurisdiction. Judge Mehta previously considered this question and determined that three-judge courts do have the power to consider regulatory claims of the type Plaintiffs assert here. *See* Mem. Op. & Order, ECF No. 34, at 17–21. We agree with Judge Mehta's analysis. Indeed, another three-judge district court recently confirmed this conclusion, observing that "[t]he Supreme Court has made clear that a properly convened three-judge district court has some ability to exercise a brand of supplemental jurisdiction over claims beyond those that form the core of its statutory jurisdictional grant." *Castañon v. United States*, No. 18-cv-2545, 2020 WL 1189458, at *6 (D.D.C. Mar. 12, 2020) (Wilkins, J.); *see also Zemel v. Rusk*, 381 U.S. 1, 5–6 (1965); *Allee v. Medrano*, 416 U.S. 802, 812 (1974). Moreover, we agree with Judge Mehta that the Supreme Court's decision in *McConnell v. FEC*, 540 U.S. 93 (2003), does not compel a different result. *See* Mem. Op. & Order, ECF No. 34, at 18–19. Rather than reexamine this threshold question in detail, we direct the parties to Judge Mehta's opinion.

Because supplemental jurisdiction is permitted but not required, we next consider whether to exercise discretionary supplemental jurisdiction over Plaintiffs' regulatory claims. In cases involving claims subject to review by a three-judge court, supplemental jurisdiction has generally

been found to be proper where the ancillary claims "[bear] an intimate relation to those that impelled the formation of a three-judge district court in the first instance." *Castañon*, 2020 WL 1189458, at *6 (collecting cases). In other words, the propriety of supplemental jurisdiction in three-judge district court cases turns on many of the same considerations that are present in every case involving a question of pendent jurisdiction: Whether the core and ancillary claims are "so related … that they form part of the same case or controversy." *Adams v. Clinton*, 40 F. Supp. 2d 1, 4–5 (D.D.C. 1999) ("*Adams I*") (quoting 28 U.S.C. § 1367); *see also Green v. Connally*, 330 F. Supp. 1150, 1170 (D.D.C. 1971) (three-judge court) ("The test is that the two claims 'must derive from a common nucleus of operative fact,' and if 'a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the [three-judge] issues, there is *power* in [the three-judge] court[] to hear the whole.'" (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966)), *aff'd sub nom. Coit v. Green*, 404 U.S. 997 (1971).

That is precisely the case here. Plaintiffs' core constitutional challenge to the statute and its implementing regulations is identical: Both the statute and the regulations are alleged to impose the same unconstitutional burden on the rights of Plaintiffs, other candidates, and potential post-election donors to engage in protected First Amendment activity. For that reason, as Plaintiffs point out, the regulatory claims will not "predominate" over the statutory challenge. *See* 28 U.S.C. § 1367(c)(2). Rather, Plaintiffs' constitutional challenge to the regulations "is aimed … at the subsidiary details of how Section 304's [allegedly] unconstitutional limit is implemented." Pls.' Opp'n to Defs.' Mot., ECF No. 43 (hereinafter Pls.' Opp'n), at 21. Indeed, in many respects, the regulations at issue simply echo the legal limits established by Section 304. There is also significant *factual* overlap between Plaintiffs' as-applied challenges to the statute and the regulations, as both sets of claims arise out of Senator Cruz's 2018 loans to his senatorial campaign.

5

Defendants attempt to downplay the relatedness of the statutory and regulatory claims by emphasizing that Plaintiffs' APA challenge to the implementing regulations will focus primarily on "the [administrative] record that the Commission considered in promulgating the regulation," while their statutory challenge will center on facts regarding Congress's interests in promulgating this statutory scheme, and its "tailoring of the provision in serving those interests, including any burdens it places on plaintiffs and others." Defs.' Reply ISO Consolidated Mot., ECF No. 44 (hereinafter Defs.' Reply), at 3; *accord* Defs.' Mot. at 10–11. But this purported distinction is not apparent from the face of the Complaint, which appears to raise *Chevron*-style challenges to the regulations that presumably would be susceptible to resolution without much (if any) resort to the administrative record. *See* Compl. ¶¶ 48, 51. In any event, even if the APA claims require some consideration of the administrative record, that difference does nothing to diminish the factual and legal overlap in Plaintiffs' *constitutional* challenges to the statute and regulations.

The cases from this district that Defendants point to in support of remand are not to the contrary. In each of these cases, the three-judge court held that the ancillary claims were so factually and legally distinct from the claims over which it had original jurisdiction that there was no basis to extend its jurisdiction. *See Adams I*, 40 F. Supp. 2d at 4–5 (declining to exercise supplemental jurisdiction where "there [were] no factual issues common to" the original and ancillary claims); *Adams v. Clinton*, 90 F. Supp. 2d 35, 39 (D.D.C. 2000) (declining supplemental jurisdiction where ancillary claims implicated distinct constitutional questions and deciding those claims "would take [the court] far afield from the core of the original jurisdictional grant"); *Turner Broad. Sys., Inc. v. FCC*, 810 F. Supp. 1308, 1314 (D.D.C. 1992) (finding supplemental jurisdiction improper where "plaintiffs … identified no links between [the core statutory claim and challenges to other sections of the statute] so close as to bring their attacks on the latter squarely within the 'same case or controversy,'" and there was "no doubt" that plaintiffs' "avalanche of [ancillary] claims

6

predominates over the" claims subject to review by a three-judge court). For the reasons already stated, that is not the case here.

Moreover, we find that interests of efficiency and consistency would be better served by considering the statutory and regulatory challenges together. While we express no view on the merits at this stage, we note that a decision invalidating Section 304's loan repayment limit as unconstitutional would effectively dispose of Plaintiffs' regulatory claims.[1] Even if the statute is upheld, the significant factual and legal overlap between the claims leads us to conclude that judicial time and resources would not be well spent by requiring this three-judge court *and* a single judge to consider separately claims that are as interwoven as these. *Cf. Henok v. Kessler*, 78 F. Supp. 3d 452, 462 n.9 (D.D.C. 2015) ("It would be a waste of judicial resources and the time and resources of the parties to decline to exercise supplemental jurisdiction only to have a [single judge] … reach these same … conclusions.").

In sum, the overlap between Plaintiffs' statutory and regulatory claims is readily apparent. Accordingly, we will exercise our discretionary supplemental jurisdiction to consider Plaintiffs' regulatory claims alongside their constitutional challenge to Section 304 of BCRA.

III.   Motion to Compel

Defendants' Motion to Compel concerns various requests for production and interrogatories directed to Senator Cruz and the Cruz Committee that relate broadly to the circumstances surrounding Senator Cruz's loans and their repayment. Plaintiffs oppose the Motion to Compel on two grounds. First, they argue that the disputed discovery requests seek documents and information

---

[1] Indeed, given the possibility that a decision on the statute's constitutionality would preempt a decision on the regulatory claims, the parties appear to agree that Plaintiffs' regulatory claims are best held in abeyance until after a decision on the constitutionality of the statute to avoid wasting judicial resources. *See* Defs.' Mot. at 9; Pls.' Opp'n at 22.

7

irrelevant to this litigation. Second, they contend that many documents sought by Defendants are shielded from discovery by a First Amendment privilege. We take each argument in turn.

A. Relevance

Defendants contend that the information sought by the disputed discovery requests is relevant to the Commission's defenses because it "would likely confirm … that plaintiffs never suffered any genuine burden from the loan repayment restriction at issue and their alleged injuries are entirely self-inflicted, for the purpose of bringing this lawsuit." Defs.' Mot. at 16. According to Defendants, information regarding the nature and extent of Plaintiffs' injury is relevant both to Plaintiffs' standing to bring this litigation, and to the merits of their constitutional claims. In response, Plaintiffs contend that issues of subjective motivation and individualized burden are entirely irrelevant to their standing and to the merits, especially because Plaintiffs have "challenge[d] Section 304 as unconstitutional *on its face*, not simply as applied to them." Pls.' Opp'n at 11–15.

As a preliminary matter, we reject outright Defendants' continued assertion that information about Plaintiffs' subjective motivation in taking out the loans is somehow relevant to Plaintiffs' standing. In his Memorandum Opinion and Order, Judge Mehta explained, in detail, why Defendants' theory that Plaintiffs caused their own injury by tailoring Senator Cruz's loans to challenge BCRA's loan repayment limit is irrelevant to standing as a matter of law. *See* Mem. Op. & Order, ECF No. 34, at 11–15. We adopt that analysis in its entirety.

Defendants fare better, however, on their argument that the information sought by these discovery requests is relevant to their defense on the merits. The heart of Plaintiffs' constitutional challenge is that Section 304 and its implementing regulations impose an unconstitutional burden on Plaintiffs' exercise of their First Amendment rights, as well as the First Amendment rights of

8

other candidates and potential post-election donors. Plaintiffs contend that the statute and regulations are unconstitutional not only on their face, but as applied to Plaintiffs specifically. In their complaint and in other submissions to the court, Plaintiffs emphasize the individualized injury they suffered as a result of this alleged constitutional infringement. *See, e.g.*, Compl. ¶ 33 ("Absent the restrictions of Section 304 and the Commission's corresponding regulation, Plaintiffs would solicit debt-retirement funds from potential donors and would use post-election contributions to defray the remaining $10,000 loan balance."); Pls.' Response to Defs.' Mot. to Dismiss, ECF No. 29, at 33 (claiming the Committee was injured by the loan repayment limit in part because "it wanted to repay its debt to [Senator Cruz] in full, no less than it wanted to pay other creditors to whom it owed money, for that would incentivize Senator Cruz, no less than others, to extend credit to the Committee in the future"). Plaintiffs' allegations imply that their actions regarding Senator Cruz's loans were compelled by the challenged statute and regulations, as opposed to unrelated strategic considerations. As such, information about Senator Cruz's motivation in taking out the loans, and how the Committee chose to repay him, may be relevant to the burden Section 304 places on Plaintiffs' First Amendment rights—and, correspondingly, to defenses the Commission may seek to mount in response to Plaintiffs' as-applied challenges. Tellingly, Plaintiffs do not grapple with the potential relevance of these matters to the merits of their as-applied challenges—instead they focus exclusively on the fact that individualized considerations of burden have no bearing on their *facial* challenges to the statute and regulations.

In the context of discovery, "[r]elevance is construed broadly." *Breiterman v. U.S. Capitol Police*, 324 F.R.D. 24, 30 (D.D.C. 2018) (quotation marks omitted). This broad interpretation of relevance "advances Rule 26's liberal and expansive purpose of … permit[ting] the parties … to develop the facts, theories, and defenses of the case." *Anvik Corp. v. Samsung Elecs.*, No. 08-CV-818, 2009 WL 10695623, at *2 (S.D.N.Y. Sept. 16, 2009). Keeping this expansive purpose in mind,

9

and in light of Plaintiffs' own assertions about the nature of the alleged burdens imposed on them, we cannot conclude that the information sought by Defendants would have no bearing on any merits-based defense they may raise to Plaintiffs' as-applied challenges. Whether such a defense ultimately will be persuasive to us a matter of law or fact is a separate issue on which we express no view. At this stage of the litigation, we ask only whether the requested materials "'bear[] on, or … reasonably could lead to other matter[s] that could bear on' any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Defendants have made that showing here. Accordingly, Plaintiffs must disclose any documents and information responsive to the disputed discovery requests that are not otherwise subject to a claim of privilege.

### B. First Amendment Privilege

Relevance is not the end of the inquiry, however. Plaintiffs also cite First Amendment concerns as a separate ground for denying Defendants' Motion to Compel. According to Plaintiffs, "nearly all of the documents sought by the FEC would be protected by the First Amendment privilege, since they reveal sensitive and confidential information about the decisions concerning political strategy and tactics made inside the Cruz Campaign during the 2018 election." Pls.' Opp'n at 15. Specifically, Plaintiffs assert that documents responsive to the disputed discovery requests include materials such as "internal discussions over which advertising markets to prioritize in the final days of the campaign, details about the cost—and results—of internal polling, and billing statements from Senator Cruz's retained political consultants that include detailed descriptions of their activities and expenses on behalf of the campaign." *Id.* at 17. In response, Defendants do not argue that the documents in question cannot be subject to a claim of First Amendment privilege—they argue instead that any First Amendment interests Plaintiffs may have in shielding these

10

documents from disclosure is outweighed by Defendants' need for the materials. Defs.' Mot. at 22–23; Defs.' Reply at 14–15.

Materials of the type described by Plaintiffs may, under certain circumstances, be withheld from discovery pursuant to a First Amendment privilege. *See, e.g.*, *NAACP v. Alabama*, 357 U.S. 449, 463 (1958); *AFL-CIO v. FEC*, 333 F.3d 168, 176–77 (D.C. Cir. 2003). The First Amendment privilege inquiry turns on a balancing of interests: The court must determine whether the interests and need of the party seeking the arguably protected materials outweigh the likely burden on the objecting party's First Amendment rights. *See AFL-CIO*, 333 F.3d at 176–78; *see also Int'l Action Ctr. v. United States*, 207 F.R.D. 1, 3 (D.D.C. 2002) ("[T]o determine whether a claim of privilege should be upheld … the plaintiffs' First Amendment claim should be measured against the defendant's need for the information sought. If the former outweighs the latter, then the claim of privilege should be upheld." (quoting *Black Panther Party v. Smith*, 661 F.2d 1243, 1266 (D.C. Cir. 1981), *vacated as moot sub nom. Moore v. Black Panther Party*, 458 U.S. 1118 (1982))). The court cannot conduct the required balancing, however, without having reviewed the materials in question, or even knowing exactly what the arguably privileged materials are.[2] Accordingly, the court will direct Plaintiffs to produce for in camera inspection any documents responsive to the disputed discovery requests that Plaintiffs seek to withhold based on a First Amendment privilege.

IV. <u>Conclusion and Order</u>

For the foregoing reasons, it is hereby **ORDERED** that:

1. Defendants' Consolidated Motion for Partial Remand and to Compel Discovery Responses, ECF No. 42, is **GRANTED IN PART AND DENIED IN PART**;

---

[2] Plaintiffs concede that their previously produced privilege logs did not identify any allegedly privileged documents that, in their view, are not subject to production on relevance grounds. *See* Pls.' Opp'n at 6 n.1 ("What the privilege logs do not identify are any privileged documents that are entirely outside the scope of discovery—whether because that document is not responsive to any discovery request or because it is responsive solely to a request that is plainly outside the scope allowed by Rule 26(b)(1), such as FEC's requests relating to the Plaintiffs' subjective motivations.").

11

2. The court shall assume supplemental jurisdiction over Plaintiffs' regulatory claims;

3. Consistent with this Memorandum Opinion, Plaintiffs shall produce all responsive, non-privileged documents, and revise their interrogatory responses and privilege logs, as to the following of Defendants' discovery requests:

   - Plaintiff Ted Cruz for Senate: Requests for Production ¶¶ 3, 5, 7, and 11; Interrogatories 7, 10, and 11.

   - Plaintiff Rafael Edward ("Ted") Cruz: Requests for Production ¶¶ 3 and 5; Interrogatories 6 and 7.

As to any documents responsive to the foregoing discovery requests over which Plaintiffs assert a First Amendment privilege, Plaintiffs shall submit three Bates-stamped sets of the documents withheld from production to the court, via Judge Mehta's chambers, for in camera inspection on or before April 6, 2020. Following in camera inspection, the court will assess the need, if any, for Plaintiffs to amend their interrogatory responses to include responsive information that Plaintiffs declined to disclose on the basis of the First Amendment privilege.

Dated: March 30, 2020

/s/
Neomi Rao
United States Circuit Court Judge

/s/
Amit P. Mehta
United States District Court Judge

/s/
Timothy J. Kelly
United States District Court Judge